IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| T-12 ENTERTAINMENT, LLC and KAREEM HAWTHORNE,<br><br>  Plaintiffs,<br><br>Vs.<br><br>YOUNG KINGS ENTERPRISES, INC., EGO ENTERTAINMENT, LLC, TROY WILLIAMS, ANTHONY ADIGHIBE, CHARLES BRYANT BOURGEOIS, DESMOND KEY, DAE'SHAWN SHELTON FRED CLARK, and KOREY FELDER,<br><br>  Defendants. | CIVIL ACTION<br><br>FILE NO.  1:14-cv-00841-TCB |

## **RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Defendants Korey Felder, Desmond Key, and Young Kings Enterprises, Inc. ("Young Kings") have asked this Court to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiffs have failed to state a claim for trademark infringement.  Defendants Desmond Key and Young Kings have also moved this Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(5), on the grounds that service on these Defendants was improper.  As set forth in detail below, neither of these grounds is proper for dismissal of this action.

1

## BACKGROUND FACTS

As set forth in the Complaint [Doc. No. 1], this is an action based on Defendants' infringing use of Plaintiffs' trademarks, including the trademark "I Plead the *5th*," as used in relation to Spring Break parties and events. Defendants, in their motion, have set forth many of the facts contained in the Complaint, but Plaintiffs will reiterate key elements herein for the Court's convenience.

Plaintiffs' Complaint alleges that Plaintiffs are in the business of planning and hosting Spring Break party and entertainment events. (Complaint, ¶ 17). In 2009, Plaintiffs developed a new theme for a series of Spring Break events in Miami which they called *I Plead the 5th*. (Complaint, ¶ 18). *I Plead the 5th* was a series of hosted parties and events at Miami, Florida nightclubs and other venues. (Complaint, ¶ 19). Plaintiffs advertised *I Plead the 5th* through a variety of means, including websites, videos, and print advertising throughout the Southeast. (Complaint, ¶ 20). The initial events in 2009 were very successful, and the public associated *I Plead the 5th* events with Plaintiffs. (Complaint, ¶ 21).

Plaintiffs again hosted *I Plead the 5th* events in Miami, Florida in 2010, 2011, 2012, and 2013, all of which were very popular with Spring Breakers and generated significant revenues and profits. (Complaint, ¶ 23). Plaintiffs developed

trademark rights in the name *I Plead the 5th* as it relates to Spring Break events, particularly those hosted in the Miami, Florida area. (Complaint, ¶ 25).

In 2014, Plaintiffs learned that Defendants were planning to put on their own series of Spring Break events under the name *I Plead the Fifth* in Miami, Florida. (Complaint, ¶ 26). These events were to be held at the same and/or similar locations to Plaintiffs' previous events. (Complaint, ¶ 27). The nature of these events was substantially identical to Plaintiffs' events that it has hosted from 2009-2013. (Complaint, ¶ 28). These events, because they are nearly identical in name and services, create an extreme likelihood of confusion in the consuming public. (Complaint, ¶ 29).

Certain Defendants did agree to stop using the mark after receiving a cease and desist letter from Plaintiffs. (Complaint, ¶¶ 31-32). However, Defendants simply changed the name on one website to read "What Happens in Miami Stays in Miami," which is a slogan Plaintiffs commonly used in conjunction with their *I Plead the 5th* events. (Complaint, ¶ 33). All other marketing was identical, which combined with the previous marketing and sales under the infringing name would still lead to consumer confusion. (Complaint, ¶ 33).

Plaintiffs discovered that Defendants were still using *I Plead the Fifth* in most, if not all, of their events and advertising, such as ticket sales, website

advertising, videos, Twitter, and more. (Complaint, ¶ 34). Defendants' continued use of the infringing marks to host Spring Break events in Miami shows a clear, intentional, and willful disregard for Plaintiffs' rights. (Complaint, ¶ 35).

Based on these facts, Plaintiffs brought this action, alleging unfair competition under the Lanham Act, violations of the Georgia Fair Business Practices Act and the Georgia Uniform Deceptive Trade Practices Act, and unfair competition and fraud in violation of O.C.G.A. § 23-2-55, as well as claims of tortious interference with business relations and unjust enrichment. All these claims arise from the same set of operative facts, above.

## ARGUMENT AND CITATION TO AUTHORITY

With regard to the standard of review for a motion under Rule 12(b)(6), Defendants have set forth an accurate recitation of the relevant law and Plaintiffs do not believe it is necessary to rehash that basic law here. However, Defendants have erred in the application of that law to the case at hand, because Plaintiffs have properly stated claims against the moving Defendants.

### I.     Plaintiffs' Complaint is not a "Shotgun Pleading."

A.   *Plaintiffs satisfy the Notice Pleading Requirements*

Defendants' first stated reason why this Court should dismiss this action is that it is a "shotgun pleading." Interestingly, however, Defendants start this

section of their argument by stating the notice-pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, and arguing that Plaintiffs "have failed to allege facts that are plausible on their face as opposed to attempting to create some far-fetched possibilities." (Defendants' Memorandum of Law in Support of Motion to Dismiss [Doc. No. 10] ("Defendant's Brief"), p. 9). Plaintiffs are unclear what "far-fetched possibilities" they are alleged to have raised. In fact, Plaintiffs are unclear as to what facts Defendants deem not "plausible"—the fact that Plaintiffs hosted a documented series of events from 2009-20013, the fact that Defendants hosted events in 2014, and the fact that both events were advertised and promoted under the same name are not only "plausible," they are documented and absolutely verifiable. In fact, Defendants admit all such facts in their response to Plaintiffs' cease and desist letter. (Defendant's letter is attached to Plaintiff's Complaint as Exhibit B).

As set forth here, and in the background facts above, the Complaint meets the requirement to make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Additionally, the Complaint contains more than enough "factual content that allows the court to draw the reasonable inferences that the [defendants are] liable for the misconduct alleged." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). No "far-fetched possibilities" are

involved; simply, Plaintiffs claim to own rights in a mark and a brand, and claim that Defendants used that mark and brand without Plaintiffs' permission, violating several state and federal laws and causing harm to Plaintiffs.

B.   *Plaintiffs' Complaint Is Not a Shotgun Pleading*

Defendants then get into their actual arguments about shotgun pleading, suggesting that Plaintiffs' Complaint is improper because it does not relate the operative facts to each claim and each Defendant. Defendants allege that this creates an inability or a difficulty in narrowing and defining the claims. However, Defendants' allegations fail on the face of the Complaint.

As set forth clearly in the Complaint, the operative facts alleged, specifically relating to Plaintiffs' creation and use of the marks and brand *I Plead the 5th* for use in Spring Break party events and Defendants' subsequent use of these marks in advertising, promoting and hosting their own events, give rise to all of the claims asserted; that is, all the alleged facts relate to each claim. Additionally, as stated in the Complaint, each of the claims set forth by Plaintiffs is brought identically against each and every Defendant. The Defendants collectively participated in planning, promoting, and hosting the events at issue. Therefore, no parsing of the facts or narrowing the claims is necessary. The alleged facts support all claims, and all claims are brought against all Defendants.

Defendants also contend that the Complaint is the very definition of shotgun pleading because each claim incorporates by reference all allegations in the preceding paragraphs. Defendants are correct that "the typical shotgun pleading contains several counts, each one incorporating by reference the allegations of its predecessors…" *Strategic Income Fund, LLC v. Spear, Leeda & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). However, it is not the incorporation itself that causes the problem, it is that such incorporation often "lead[s] to a situation where most of the counts (i.e. all but the first) contain irrelevant factual allegations and legal conclusions." *Id*. That is not the case here. Plaintiffs do incorporate all paragraphs into each claim because each claim relies on the same operative facts. The very same facts that Plaintiffs claim violate the Lanham Act also violate the Georgia Fair Business Practices Act and the Georgia Uniform Deceptive Trade Practices Act, constitute fraud in violation of O.C.G.A. § 23-2-55, and support claims of tortious interference with business relations and unjust enrichment. Plaintiffs incorporate all facts into all claims because they are all related, based on the same actions, and levelled at the same parties. There is no confusion or irrelevancies to be sifted out.

Moreover, in *Strategic Income Funds*, the Eleventh Circuit did not hold that the dismissal of the complaint was proper because there were excessive

incorporations. Rather, the it upheld the dismissal because the court stated, "[w]e have read count IV—including all that it incorporates by reference—several times; yet, we must confess that we are at a loss to explain what allegedly transpired between and among [the parties] with respect to the securities the Members pledged as collateral." *Id.* The problem wasn't the incorporation, but the failure to assert intelligible claims to which the Defendants could properly respond.

In fact, rather than the incorporation of preceding paragraphs, "[t]he defining characteristic of a shotgun complaint is that it fails 'to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading.'" *Regenicin, Inc. v. Lonza Walkersville, Inc*., 2014 WL 630715, *3, (NDGA, February 14, 2014) (quoting *Beckwith v. Bellsouth Telecomms., Inc.,* 146 Fed.Appx. 368, 371 (11th Cir.2005)). The "hallmark" of a shotgun pleading is that it is "virtually impossible to know which allegations of fact are intended to support which claims for relief." *Regenicin, Inc*., at *6.

> Courts have dismissed or ordered repleading of shotgun complaints where they are filled with irrelevant factual allegations and legal conclusions, made up of rambling recitations and immaterial factual allegations, replete with material allegations that are buried beneath innumerable pages of rambling irrelevancies, and where the court, upon reading the complaint, could not even explain what allegedly transpired between and among the parties. *Id*. (*internal quotations and citations removed*).

None of that is present here.  The allegations of the relationships of the parties is clearly and succinctly set forth in the Complaint—Plaintiffs created a trademark and brand for a series of events, Defendants came on in later years as co-promoters and co-hosts of these events, and Defendants subsequently held the same or substantially similar events without Plaintiff or Plaintiffs' permission, using Plaintiffs' marks.  There are no irrelevant facts—all alleged facts relate to the creation of the marks and the use, by all Defendants, of the marks without permission.  The Complaint has 18 paragraphs of allegations common to all counts, and 72 paragraphs total over 13 pages, not counting the "wherefore" clause.  Nothing is "buried" under "innumerable pages" or "rambling."  Rather, the Complaint contains a short and plain statement of the claims, with enough factual content to allow the court to draw the reasonable inferences that the Defendants are liable for the misconduct alleged.  Fed. R. Civ. P. 8; *Ashcroft*, 556 U.S. at 678.

Therefore, Plaintiffs' Complaint is properly pled, and states viable and discernable claims against all Defendants, including the moving Defendants.  As such, Defendants' Motion should be denied.  If, however, the Court determines that there is any confusion, immaterial facts, or lacking information, Plaintiffs would request that the Court allow them to file an amended Complaint, rather than dismissing the action.

## II.     Plaintiffs Have Alleged Sufficient Facts to State a Claim under the Lanham Act.

Defendants' next ground for dismissal is their argument that Plaintiffs have failed to allege sufficient facts under the Lanham Act. As a preliminary matter, Defendants make several arguments that Plaintiffs' trademark is "of some unspecified kind," that "it is certain that Plaintiffs have not registered the trademark," and that while Plaintiffs "perhaps are pleading on some common law theory, … the court can only surmise as much." (Defendants Brief, p. 12 and FN2). Plaintiffs admittedly do not have a registered mark, and that is expressly why they are proceeding under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which provides remedies for infringement of unregistered, common-law marks, as opposed to Section 32 of the Lanham Act, 15 U.S.C. § 1114, which provides remedies for infringement of registered marks.

As Defendants have stated in their brief, courts treat claims under these two statutes with identical standards. (Defendants' Brief, p. 11)(*Citing A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir., 2000). The only difference between the two claims is whether the Plaintiffs are claiming rights in registered marks or common-law marks. Therefore, the very fact that Plaintiffs brought a claim for Unfair Competition under Section 43 of the Lanham Act shows, on its face, that Plaintiffs are proceeding under a claim of

common-law rights. No "surmise" or guesswork is required by the Court. Moreover, the facts alleged in the Complaint show that Plaintiffs are claiming ownership simply by use, not by registration, again making a common-law claim.

A. *Plaintiffs Have Pled Abundant Facts Showing that They Own a Legally Protectable Mark*

With regard to the sufficiency of the factual allegations themselves, Defendants' argument is that Plaintiffs have not alleged that the mark is legally protectable, or that Plaintiffs own the mark. As a preliminary matter, a mark is protectable when it is used by a person to identify and distinguish his or her goods or services from those of others; that is, the mark is sufficiently distinctive to identify the goods or services. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992); *Tana vs. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010). The Eleventh Circuit recognizes four levels of distinctiveness:

> (1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of trademarks.

11

*Tana*, 611 F.3d at 774. Suggestive, arbitrary, and fanciful marks are inherently distinctive and are entitled to trademark protection. *Two Pesos, Inc.,* 505 U.S. at 768; *Tana*, at 774.

Plaintiffs stated in their complaint that they used *I Plead the 5th* to identify their series of Spring Break events, that they advertised and promoted *I Plead the 5th* through a variety of means, that they used the name on events from 2009-2013, that they developed trademark rights in the name, that the name is arbitrary and distinctive, and that the public identifies the name with Plaintiffs' events. (Complaint, ¶¶ 18-23, 25, 38). These claims of use to distinguish goods and services, and claims that the mark is arbitrary and distinctive, satisfy the requirements to plead that the mark is protectable. In fact, even if the mark was not inherently protectable, Plaintiffs also pled that the mark has acquired secondary meaning, in that the mark has been in use for many years and the public has come to identify the mark with Plaintiffs' events. (Complaint, ¶¶ 21-23, 38). This secondary meaning allows a mark to be protected even if the mark is not inherently distinctive. *Two Pesos, Inc.,* 769; *Tana*, at 774. Therefore, Plaintiffs' Complaint makes numerous factual assertions that the marks are legally protectable.

With regard to Plaintiffs' ownership of the mark, Plaintiffs have alleged that they, Plaintiffs, developed the *I Plead the 5th* theme. (Complaint, ¶ 18). The

Complaint contains allegations that they, Plaintiffs, advertised, promoted and hosted events. (Complaint, ¶¶ 19-23). Plaintiffs further state that the public associates the mark with Plaintiffs. (Complaint, ¶¶ 21, 38). Finally, Plaintiffs allege affirmatively that they, Plaintiffs, acquired trademark rights in the name. (Complaint, ¶ 25). Plaintiffs are unclear as to what else they could allege to support their claim of ownership of the mark. Again, the facts alleged in the Complaint are more than sufficient to satisfy the notice pleading requirements.

B.   *Plaintiffs Have Pled that Defendants' Improper Use is Likely to Cause Confusion*

Defendants lay out their alleged standard for proving whether there is a likelihood of confusion by setting out an eight-prong analysis used by the Sixth Circuit. It is unclear why Defendants chose not to apply the proper seven-factor analysis used by the Eleventh Circuit. *See Tanas*, *supra*, at 774-775. Regardless of the proper standard, however, Plaintiffs are not required to prove likelihood of confusion at this stage, but rather provide sufficient notice as to their claims against Defendants.

Defendants have denied that Plaintiffs have accomplished even this, stating that Plaintiffs have "failed to plead any facts that would guide this court through the likelihood of confusion inquiry." (Defendants' Brief, p. 13). Plaintiffs, however, have an entire section of their Complaint subtitled "The Infringements,"

wherein Plaintiffs detail the improper actions taken by Defendants. (Complaint, ¶¶ 26-35). Plaintiffs also set forth facts and allegations relating to likelihood of confusion in Count I of their Complaint. (Complaint, ¶¶ 36-48). Most importantly, boiled down to its essence, Plaintiffs' claims are that Defendants used the identical mark for identical services in the identical geographic location. It is hard to see how there could be a clearer claim that confusion is likely.

Therefore, Plaintiffs have properly pled a claim under the Lanham Act, and Defendants' Motion to Dismiss must be denied. Again, if the Court determines that there is any lacking information, Plaintiffs would request that the Court allow them to file an amended Complaint, rather than dismissing the action.

### III.     Service.

Plaintiffs have also moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(5) for improper service on Desmond Key and Young Kings. Of course, this could only dismiss Mr. Key and Young Kings from this action until such time as they were properly served. Improper service on two Defendants should not result in a complete dismissal of Plaintiffs' action, especially where proper service has been made on three other Defendants, including one of the Defendants filing the instant Motion, and where default has been entered against two Defendants.

Additionally, this Court has held that "dismissal of a civil action for failure to [properly serve process] is inappropriate unless otherwise a party's rights would be seriously prejudiced or no reasonably conceivable means of acquiring jurisdiction over the defendant remains." *Miree v. U.S.*, 490 F.Supp. 768, 776 (N.D.G.A., 1980). "[T]he suit should not be dismissed unless the defendant has been seriously prejudiced by the mistake, or by the delay in correcting it." *Id*. Here, there has been no delay; Plaintiffs are still well within the time limit to serve process allowed by the Federal Rules. Fed. R. Civ. P. 4(m). There also has been no prejudice to Defendants Key or Young Kings. They have missed no deadlines, lost no discovery time, nor been prejudiced in this case whatsoever. Therefore the Motion should be denied.

A.     *Service on Desmond Key*

As stated in Defendants' Brief, Plaintiffs originally served, or believed they had served, Mr. Key by leaving a copy of the summons and complaint with Helen Robertson at his residence. When Plaintiffs' process server went to serve Mr. Key, he was greeted by Ms. Robertson, who was working in the yard. (Affidavit of Jeff Dolbier ("Dolbier Aff."), attached hereto as Exhibit "A," ¶ 6). Ms. Robertson told the process server that Mr. Key had just left, that she would give the papers to Mr. Key, and took the complaint inside the house through the back door. (Id.). Based

on this, the process server assumed Ms. Robertson lived at the residence and that service was proper. (Id.)

Upon receiving Defendants' Motion, Plaintiffs again tried to personally serve Mr. Key. In the process, Plaintiffs learned that Ms. Robertson did not live at that residence, but confirmed that Mr. Key and his mother, Ms. Jordan, do live at 5380 Longmeadow Lane, College Park, GA 30349. (Dolbier Aff, ¶¶ 9-11). After numerous attempts to personally serve Mr. Key, Plaintiffs served process on Mr. Key by leaving a copy at his residence with his mother, a person of suitable age also dwelling at that residence. (Dolbier Aff, ¶¶ 12-16). This is good service on Mr. Key pursuant to Fed. R. Civ. Pro. 4(e)(2)(B).

Mr. Key has argued, in the motion to dismiss, that he does not reside at the 5380 Longmeadow Lane address. However, he has not stated where he does in fact reside. Counsel for Plaintiffs has asked Mr. Key's counsel for a better address, but has received no response. (Affidavit of Thomas Mihill ("Mihill Aff."), attached hereto as Exhibit "B," ¶ 8). Moreover, both Ms. Robertson and Mr. Key's mother, Ms. Jordan, have repeatedly confirmed that he does reside at that address. (*See* Dolbier Aff., ¶¶ 6, 10, 12, 15-16). Finally, Mr. Key is listed as registered agent for Young Kings, and the registered agent address provided to the Georgia Secretary of State is the same 5380 Longmeadow Lane address. (Mihill Aff., ¶ 4).

16

Therefore, Plaintiffs have served Mr. Key pursuant to Fed. R. Civ. Pro. 4(e)(2)(B) as of May 15, 2014.

B.     *Service on Young Kings*

Plaintiffs acknowledge that their process server made an error in serving process upon Young Kings by serving Ms. Robertson, and acknowledge that this service was insufficient. However, both the principal office address and the address for the registered agent for Young Kings are listed with the Secretary of State as 5380 Longmeadow Lane, College Park, GA 30349. (Mihill Aff., ¶ 4). Plaintiffs' process server has made multiple attempts to serve Young Kings at this address, but has been unsuccessful. (Mihill Aff., ¶ 5; Dolbier Aff., ¶ 6-15).

No other officers or directors are listed for Young Kings, and none can be found at this address because it is Mr. Key's personal residence. (Mihill Aff., ¶ 6). Because Plaintiffs have been unsuccessful at serving Young Kings at its principal address, Plaintiffs' counsel has begun the process of obtaining substitute service on Young Kings through the Georgia Secretary of State, while continuing to attempt service on Mr. Key as registered agent. (Mihill Aff., ¶ 7). Therefore, Young Kings will be served promptly.

## **CONCLUSION**

Plaintiffs have properly pled their claims against Defendants, giving Defendants clear notice of Plaintiffs' claims in accordance with Fed. R. Civ. P. Rule 8. As such, Plaintiffs' Complaint cannot be dismissed for failure to state a claim. With regard to service of process, Mr. Key has been served and Plaintiffs are in the process of serving Young Kings well within the timelines of Fed. R. Civ. P. 4. Therefore, Plaintiffs' Complaint should not be dismissed and Defendants' Motion should be denied.

Respectfully submitted, this 16th day of May, 2014.

        s/Thomas J. Mihill
        Thomas J. Mihill
        Georgia Bar Number: 001363
        Logan B. Winkles
        Georgia Bar Number: 136906
        Julie R. Comer
        Georgia Bar Number: 380547

        CANNON, MIHILL & WINKLES
        101 Marietta Street, Suite 3120
        Atlanta, Georgia 30303
        Telephone: (404) 891-6700
        Facsimile: (404) 467-6701
        tjmihill@cmw-law.com
        *Counsel for Plaintiffs*

## **Rule 7.1(D) Certification**

This is to hereby certify that the foregoing Motion was prepared in 14-point Times New Roman font.

                                                    s/Thomas J. Mihill
                                                    Thomas J. Mihill
                                                    Georgia Bar Number: 001363

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing RESPONSE TO DEFENDANTS' MOTION TO DISMISS by filing said Motion on the Court's CMECF system which will automatically generate electronic notice to Defendants' counsel of record at the following address:

Pat D. Dixon III, Esq.
Law Offices of Pat D. Dixon, III, LLC
P.O. Box 551014
Atlanta, Georgia 30355
*Counsel for Korey Felder, Desmond Key, and*
*Young Kings Enterprises, LLC*

I further certify that I have served the foregoing by United States Postal Service to the following non-CM/ECF participants:

Charles Bryant Bourgeois
2710 Noble Creek Dr NW
Atlanta, GA 30327

And

Ego Entertainment, LLC
c/o its Registered Agent
Charles Bryant Bourgeois
2710 Noble Creek Dr NW
Atlanta, GA 30327

This 16th day of May, 2014.

s/ Thomas J. Mihill
Thomas J. Mihill
Georgia Bar Number 001363